IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUPERVALU, INC., <br>    Plaintiff, <br><br> v. <br><br> BOARD OF TRUSTEES OF THE SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA TEAMSTERS AND EMPLOYERS PENSION FUND a/k/a THE TRUSTEES OF THE SOUTHWESTERN PENNSYLVANIA AND WESTERN MARYLAND AREA TEAMSTERS AND EMPLOYERS PENSION FUND, <br><br>    Defendants. | Civil Action No. 05-0737 <br><br> Judge Joy Flowers Conti <br><br> Magistrate Judge Caiazza |

## **MEMORANDUM ORDER**

On June 5, 2005, this case involving an appeal from an award of an arbitrator was referred to United States Magistrate Judge Francis X. Caiazza for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

On April 11, 2006 the magistrate judge issued a Report (Doc. 21) recommending that the district court grant the Motion for Summary Judgment filed by the plaintiff, SUPERVALU, Inc. (the "plaintiff"), asking that the final award of the arbitrator be set aside. (Doc.13). At the same time, the magistrate judge recommended that the court deny the Motion for Summary Judgment filed by defendants, Board of Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund a/k/a the Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund (the "Fund"), seeking confirmation of the final award. (Doc. 11).

Service of the Report and Recommendation was made on the parties. On May 2, 2006, lengthy objections were filed by the Fund. (Doc. 22). On May 12, 2006, a response to those objections (Doc. 23) was filed by the plaintiff.

The court approaches this case knowing that it should balance, similar to situations involving the National Labor Relations Act, 29 U.S.C. § 158 *et seq.*, "on the one hand, an employer's 'freedom to contract . . . including the right to transfer its assets, reorganize its business or close a portion thereof,'. . . and, on the other, . . . to 'prevent employers from evading obligations under [the applicable statute]. . . .'" Stardyne, Inc. v. National Labor Relations Board, 41 F.3d 141, 148 (3d Cir. 1994)(internal citations omitted). With this responsibility in mind, the court reviewed the submissions of the parties and the record before the magistrate judge. The court adopts the Report and Recommendation as the opinion of the court subject to the following determinations made with respect to the Fund's major objections.[1] These objections are addressed *seriatim*.

The Fund argues first that the magistrate judge did not accord due deference to the findings of the arbitrator, and failed to understand the unique circumstances surrounding the collective bargaining agreement. The court disagrees. The magistrate judge applied the correct standard of review, adopting the arbitrator's findings of fact, and reviewing his conclusions of law *de novo*. China Minmetals Materials Import and Export Co., Ltd. v. Chi Mei Corp., 334 F.3d 274, 278 (3d Cir. 2003). The magistrate judge identified the legal issues and explained in detail his disagreement with the arbitrator's conclusions of law.

---

[1]The objections not discussed in this order were adequately addressed by the magistrate judge in the Report and Recommendation which is adopted by this court as its opinion.

The Fund next contends that the magistrate judge failed to appreciate critical differences between the facts of this case and those in ITU Pension Plan and Ft. Worth Star Telegram, 5 E.B.C. 1193 (E. Mittleman Arb. 1984), and Cuyamaca Meats, Inc. v. San Diego and Imperial Counties Butchers' and Food Employers' Pension Trust Fund, 827 F.2d 491 (9th Cir. 1987). Again, the court disagrees. The magistrate judge expressly addressed the factual differences in these decisions, and explained why, despite those differences, the legal analysis in each was persuasive and applicable to this case.[2]

The Fund turns next to 20 U.S.C. § 1392(c), arguing that the magistrate judge ignored the section's "plain meaning." "It is axiomatic that '[t]he starting point in every case involving construction of a statute is the language itself.'" Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985) (quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756 (1975) (Powell, J., concurring)). In other words, the threshold question is whether the "language is clear and unambiguous." 2a NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.01, at 121-22 (6th ed. 2000). The "plain meaning rule" has been articulated many ways. The court finds the following formulation helpful:

> What has come to known as the plain meaning rule has been given expression in a variety of ways. When the intention of the legislature is so apparent from the face of the statute that there can be no question as to its meaning, there is no room for construction.

Id. at 118-19 (quoting Meeks v. West, 12 Vet. App. 352 (1999)).

---

[2]The Fund criticizes, too, the magistrate judge's treatment of the decision in Dorn's Transportation, Inc. v. Teamster's Pension Trust Fund of Philadelphia, 787 F.2d 897 (3d Cir. 1986). Although the magistrate judge confined his discussion of Dorn's to a footnote, that note summarized the essence of Dorn's holding: parties do not violate section 1392(c) when they act in good faith. Beyond that, the court does not find that Dorn's is particularly helpful to either side. Contrary to the finding of the arbitrater, the decision did not define "good faith." Furthermore, Dorn's involved facts dissimilar to those in this case, and, as the parties' analyses make clear, its "rule" is difficult to articulate outside those facts. Dorn's does not, in and of itself, dictate the outcome of this decision.

The Fund argues that the magistrate judge erred in failing to adopt the arbitrator's finding that section 1392(c) "ha[s] a straightforward reading" requiring that the date of withdrawal specified in the collective bargaining agreement made between the plaintiff and the unions be set aside. The court reexamined the arbitrator's decision and finds that his references to the plain meaning of section 1392(c) are (1) conclusory; (2) unsupported by citation to authority of any kind; and (3) inconsistent with the arbitrator's prior interpretation of the section. The first two observations were reflected in the Report and Recommendation. Report and Recommendation at 6-7. The court, therefore, focuses here on the third observation. In determining whether the magistrate judge erred in failing to invoke a plain meaning rule, the court finds it significant that the arbitrator, in another decision, recognized that the language of section 1392(c) is susceptible of more than one meaning. In the decision captioned In re Flying Tiger Lines, Inc. and Teamsters Pension Trust of Philadelphia, 19 E.B.C. 2830, (Nagle, Arb.), *enforced sub nom.* Trustees of Teamsters Pension Trust Fund of Philadelphia and Vicinity v. Federal Express Corp., 20 E.B.C. 1050 (D. Del. Dec. 27, 1995) *aff'd sub nom*. Flying Tiger Line, Inc. v. Central States, Southwest and Southeast Areas Pension Fund, 96 F.3d 1382 (3d Cir. Del. 1996)(Table, No. 96-7050), the arbitrator held that the reach of section 1392(c) was limited. He wrote: "Judging at least from the reported decisions, it appears that this provision has seldom been invoked and, with one exception, has never been held applicable." 19 E.B.C. 2846. He then identified five decisions in which section 1392(c) was found inapplicable, noting that the single contrary decision was later withdrawn. Id. at n.5.

The arbitrator also discussed the decision of the United States Court of Appeals for the Third Circuit in Dorn's Transportation v. Teamsters Pension Trust Fund, 787 F.2d 897 (3d Cir.

1986), summarizing its holding narrowly: "[I]n the context of the sale of a business, a transaction has as its principal purpose the evasion of withdrawal liability within the meaning of the statute only if *both* parties to the transaction share that purpose." Flying Tiger, 19 E.B.C. at 2847 (emphasis in original).  The arbitrator commented: "While *the statutory language might well support a more expansive reading*, other courts have also read the provision narrowly." Id. at n.6 (emphasis added)(citing Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers Pension Fund, 638 F. Supp. 885 (S.D. Cal. 1986), aff'd, 827 F.2d 491 (9th Cir.1987), as rejecting application of section 1392(c) where employer timed withdrawal to minimize liability).  The arbitrator's broad interpretation of section 1392(c) in this case does not square with his narrow reading of the same provision in Flying Tiger.  If the phrase "evade and avoid" has a plain meaning, that meaning cannot expand and contract depending upon the circumstances.

Although the arbitrator articulated that the applicable statute had a plain meaning, the arbitrator clearly looked beyond the parameters of section 1392(c) in order to reach his decision. He discussed other provisions of the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1382, *et seq.* (the "MPPAA"), explaining that the results in ITU and Cuyamaca[3] turned on the financial status of the plan rather than on the language of the provision alone.  He also looked to the provision's legislative history.

The Fund's "plain meaning" argument is also undercut by the fact that decision makers have differed as to the "plain meaning" of the same language.  While the arbitrator in this case

---

[3] The arbitrator in Flying Tiger, however, discussed Cuyamaca in a footnote, highlighting the court's narrow interpretation of section 1392(c): "[T]he court rejected a fund's assertion that the employer's timing of a withdrawal so as to minimize liability [was covered]." 19 E.B.C. at 2847 n.6. The arbitrator also noted that the court in Cuyamaca read the legislative history to suggest that section 1392(c) was directed at "'essentially fraudulent maneuvers lacking in economic substance.'" Id. (quoting 638 F. Supp. at 889-90).

found that section 1392(c) is not limited to situations involving deception or fraud, the arbitrator in ITU disagreed.  He found that the phrase "evade or avoid" has a well understood meaning in the law; it is limited to essentially fraudulent transactions designed to prevent the employer from being assessed the true withdrawal liability which is owed under the statute.  The Report and Recommendation's note seven collects decisions adopting this view, applying section 1392(c) to situations where only the parties have engaged in some variety of sham transaction.  The section has been applied almost exclusively in these narrow circumstances.

The court is persuaded by the relevant case law, particularly the decision in ITU, that the better view is that the meaning of the phrase "avoid or evade" is not plain, but that the phrase has a well understood meaning in the law.  Proper application of section 1392(c) can, therefore, be determined only by considering the overall statutory scheme, and the context in which the section is invoked.[4]

Because the magistrate judge was convinced that section 1392(c) was subject to more than one interpretation, he adopted the reasoning of the arbitrator in ITU.  He found that it was necessary to examine section 1392(c) in the context of other ERISA provisions, the case law, and the available legislative history.  The magistrate judge conducted this examination, fully articulating his reasoning.  The court finds that his reasoning and his conclusion were sound.

Finally, the Fund argues that the magistrate judge erred in determining the date of the

---

[4] Even assuming that a "plain meaning" could be found, one could argue that when the kind of transaction in issue – here, the collective bargaining agreement – is a transaction contemplated by the statute under which the date for determining withdrawal liability may be established, the completion of the transaction could not be a means under the statute to avoid or evade liability.  See discussion *infra* concerning the interrelated provisions of the MPPAA, especially the definition of "obligation to contribute."  "[S]tatutory language must always be read in its proper context. 'In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'"  McCarthy v. Bronson, 500 U.S. 136, 139 (1991)(quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988).

plaintiff's withdrawal. One of the primary points made by the magistrate judge is that determining the date of withdrawal under ERISA does not involve the exercise of discretion; it is fixed instead by a statutory formula. The date of withdrawal is determined with reference to interrelated provisions of the MPPAA. The statute defines the term "complete withdrawal," 29 U.S.C. §§ 1981(b)(2), 1983(a). A complete withdrawal takes place when an employer permanently ceases to have an obligation to contribute <u>under</u> <u>the</u> <u>plan</u> or when the employer permanently ceases all covered operations <u>under</u> <u>the</u> <u>plan</u>. The "obligation to contribute" is defined as an obligation arising under the collective bargaining agreement. 29 U.S.C. § 1392(a). Under the terms of these provisions, the plaintiff's complete withdrawal from the plan occurred on June 29, 2003. Nothing in the record or the statutory scheme permits the Fund, an arbitrator, or a court to vary that date.[5]

      The court agrees with the magistrate judge that in creating withdrawal liability Congress acted to protect the financial well-being of funds – not by taking a scattershot approach – but by imposing a specific, calculable disincentive for employers contemplating withdrawal. Withdrawal liability <u>is</u> the penalty. Congress elected to implement this penalty by incorporating specific, detailed, and comprehensive withdrawal liability provisions into an already complex ERISA framework. Countless funds, employers, and employees rely on these provisions in ordering and administering their retirement plans. Where, as here, the facts do not show clearly that the plaintiff acted to evade or avoid, rather than minimize, its exposure to withdrawal

---

[5]This is not to say that a hypothetical date of withdrawal would not be precluded in cases involving a fraudulent or sham transaction. As the plaintiff pointed out, using a hypothetical date in that situation would not require ignoring a specific statutory provision, such as section 1383(a). That section unequivocally establishes the date of withdrawal, eliminating the option of setting a hypothetical date.

liability, the court will not interfere with the established framework.  The court is convinced that the circumstances of this case do not warrant expansion of the reach of section 1392(c).  To hold otherwise would significantly alter the rules governing withdrawal liability.  This is not the province of the court.  If the reach of section 1392(c) is to be expanded to the extent that it trumps 1392(a), this expansion should come from Congress.

In reaching this conclusion, both the magistrate judge and the court recognize that the plaintiff, in effect, marched openly to the outer margin of established rules governing withdrawal liability.  Because the court concludes that the plaintiff's conduct did not violate the law, it declines to modify unilaterally the penalty provisions of ERISA by reading section 1392(c) more expansively than it has ever been read.  Doing so could topple the proverbial first domino.  Changing one ERISA provision could require modifying another, injecting uncertainty and confusion into a scheme where consistency and predictability are critical.

In a final comment, the court assures the parties that it considered their request for oral argument.  Because the factual questions have been resolved, and the legal issues have been ably articulated by the parties in their submissions and thoroughly analyzed, the court finds that oral argument is unnecessary.

After a *de novo* review of the submissions of the parties and the record before the court, together with the Report and Recommendation and the objections thereto, the following order is entered:

AND NOW, this 26th day of July, 2006, IT IS HEREBY ORDERED that the plaintiff's Motion for Summary Judgment setting aside the final award of the arbitrator (Doc. 13) is **GRANTED**, and the defendants' Motion for Summary Judgment (Doc. 11) seeking confirmation of the final award of the arbitrator is **DENIED**.

The Report and Recommendation of Magistrate Judge Caiazza dated April 11, 2006 is hereby adopted as the opinion of the court, together with the conclusions set forth in this order.

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of the plaintiff, SUPERVALU, Inc., and against defendants, Board of Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund.

The clerk shall mark this case closed.

By the Court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc:

Francis X. Caiazza
U.S. Magistrate Judge

Counsel of Record

Via electronic mail